UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHANIEL WELLS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. C21-602RSM<br><br>ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 |

## I.    INTRODUCTION

Before the Court is Petitioner's 58-page § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Dkt. #1. Nathaniel Wells challenges the 134-month sentence imposed on him by this Court following his guilty plea for conspiracy to commit bank fraud. *Id.* at 2; Case No. 2:16-cr-0007-RSM, Dkts. #230, #232. Petitioner challenges his sentences on ten grounds, detailed below. Dkt. #1. After full consideration of the record, and for the reasons set forth below, the Court DENIES Mr. Wells's § 2255 Motion.[1]

---

[1] Toward the end of his Motion, Mr. Wells suggests re-assignment to a new judge in this case "is advisable." *See* Dkt. #1 at 52-54. Mr. Wells has not filed a separate recusal motion as required by Local Civil Rule 3(f). His reasons for recusal (*e.g.* "Judge Martinez will feel, in these current proceedings, that he has already spent enough time on the case… and therefore he does not need to consider the case anew…") do not include extrajudicial bias and could be said to apply to any judge considering a § 2255 motion on their own prior criminal case—a common occurrence. The Court would decline to recuse even if these reasons were properly presented.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 1

## II. BACKGROUND

The Court generally agrees with the relevant background facts as set forth by the Government and demonstrated by court records. *See* Dkt. #11 at 5–14. Mr. Wells does not dispute the vast majority of this procedural background. He mainly disputes details of the financial fraud victims' injuries and whether these injuries satisfied the elements of conspiracy to commit bank fraud. The Court will attempt to focus only on those facts relied on by the Court in reaching its ruling.

On January 14, 2016, the Government filed an indictment charging Mr. Wells and two codefendants with Conspiracy to Commit Bank Fraud. Case No. 2:16-cr-0007-RSM, Dkt. #35. A superseding indictment was later filed adding a fourth codefendant. Case No. 2:16-cr-0007-RSM, Dkt. #53. On January 6, 2017, Mr. Wells pleaded guilty without the benefit of a plea agreement. Case No. 2:16-cr-0007-RSM, Dkt. #114.

In July, August, and September of 2017, a four-day evidentiary hearing was held to determine sentencing guideline enhancements and the amount of restitution owed. Mr. Wells submitted a memorandum with several evidentiary and legal arguments. Case No. 2:16-cr-0007-RSM, Dkt. #163.

Prior to sentencing, Wells moved to withdraw his guilty plea and to dismiss the indictment. Case No. 2:16-cr-0007-RSM, Dkt. #205.

Sentencing occurred on March 30, 2018. Case No. 2:16-cr-0007-RSM, Dkt. #230. The Court denied Mr. Wells's motion to withdraw his plea and to dismiss the indictment and denied his motion for reconsideration of its prior Guidelines determinations. Case No. 2:16-cr-0007-RSM, Dkt. #299 at 3–4. The Court restated its written Guidelines calculation—total offense level 32, Criminal History Category VI—yielding a Guidelines range of 210 to 262 months.

Case No. 2:16-cr-0007-RSM, Dkt. #299 at 3. The Court imposed a 134-month prison sentence, followed by 5 years of supervised release, and ordered $5,816,938.82 in restitution. Case No. 2:16-cr-0007-RSM, Dkt. #232 and Dkt. #299 at 22-24. This sentence was based in part on a finding of ten or more victims. The court also imposed a sentence for Wells's supervision revocation: 36 months' imprisonment with no following supervision. Case No. 2:16-cr-0007-RSM, Dkt. #299 at 26. This sentence was ordered to run concurrently with the sentence in his current criminal case. *Id.*

Mr. Wells appealed his conviction and both sentences. Case No. 2:16-cr-0007-RSM, Dkt. #235.

The Government later raised an issue with the factual support for the number of victims and moved for a limited remand to resolve this issue, which the Ninth Circuit granted. Case No. 2:16-cr-0007-RSM, Dkt. #314. On remand, new evidence was collected by the Government to support the ten-or-more-victims finding. Case No. 2:16-cr-0007-RSM, Dkt. #334. Mr. Wells objected to this evidence and asked for an evidentiary hearing. Case No. 2:16-cr-0007-RSM, Dkt. #343. The Court denied Mr. Wells' request and reaffirmed its ruling about the number of victims enhancement. Case No. 2:16-cr-0007-RSM, Dkt. #347.

The case went back up on appeal. Mr. Wells's direct appeal did not raise any issue about the sentence imposed for his supervised release revocation. Regarding his conviction for conspiracy to commit bank fraud, he raised the following issues:

1. The Court erred by applying the predominance-of-the-evidence and not the clear-and-convincing-evidence standard in determining the Guidelines enhancements for loss amount, relevant conduct, and leadership role;

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 3

2. The Court erred in holding that all the losses caused by the conspiracy were attributable to Wells as relevant conduct;

3. The Court erred in holding that Wells qualified for a leadership enhancement;

4. In calculating the loss amount, the Court erred in holding that Wells was liable for all losses caused by the conspiracy;

5. In calculating the loss amount under the Guidelines, the Court erred in holding Wells liable for actual and intended losses, not just actual losses;

6. The Court erred in holding that Wells's crime involved ten or more victims;

7. The Court erred in denying his motion to dismiss for lack of subject matter jurisdiction without holding a hearing to determine whether the payment processors were "financial institutions" withing the meaning of the bank-fraud statute;

8. The Court erred in denying Wells's motion to withdraw his guilty plea;

9. The Court erred in holding Wells jointly liable for the entire amount of restitution ordered; and

10. During the limited remand, the Court erred in reaffirming its ten-or-more victims finding without holding an evidentiary hearing.

*United States v. Wells*, 9th Cir. Case No. 18-30074, Dkts. #10 and #61. The Ninth Circuit rejected these arguments and affirmed Wells's conviction and sentences. *United States v. Wells*, 804 F. App'x 515 (9th Cir. 2020).

Mr. Wells filed this instant petition on May 3, 2021. Dkt. #1. He requests an evidentiary hearing to address the merits of his claims, dismissal of the superseding indictment, resentencing, suppression of evidence, and that the Court vacate his guilty plea. *Id*. at 58.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 4

### III. DISCUSSION

#### A. Legal Standard

A motion under 28 U.S.C. § 2255 permits a federal prisoner in custody to collaterally challenge his sentence on the grounds that it was imposed in violation of the Constitution or laws of the United States, or that the Court lacked jurisdiction to impose the sentence or that the sentence exceeded the maximum authorized by law.

A petitioner seeking relief under Section 2255 must file his motion with the one-year statute of limitations set forth in § 2255(f).

A claim may not be raised in a Section 2255 motion if the defendant had a full opportunity to be heard on the claim during the trial phase and on direct appeal. *See Massaro v. United States*, 123 S. Ct. 1690, 1693 (2003). Where a defendant fails to raise an issue before the trial court, or presents the claim but then abandons it, and fails to include it on direct appeal, the issue is deemed "defaulted" and may not be raised under Section 2255 except under unusual circumstances. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also United States v. Braswell*, 501 F.3d 1147, 1149 & n.1 (9th Cir. 2007). Unless the petitioner can overcome this procedural default, the Court cannot reach the merits of his claims. *See Bousley*, 523 U.S. at 622. To do so, the petitioner must "show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982).[2] To demonstrate "cause" for procedural default, a defendant generally must show that "some objective factor external to the defense" impeded his adherence to a procedural rule. *Murray*, 477 U.S. at 488. *See also United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003). The Supreme Court has held that "cause" for

---

[2] Another means by which procedural default may be excused is by establishing actual innocence. *See Bousley*, 523 U.S. at 622.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 5

failure to raise an issue exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). The "prejudice" prong of the test requires demonstrating "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 at 170.

### B. Evidentiary Hearing

The Court finds that an evidentiary hearing is not required in this case because Mr. Wells's allegations can be refuted from the record on procedural grounds. *See* Dkt. #11 at 5 (citing 28 U.S.C. §2255(b); *Shah v. United States*, 878 F.2d 1156, 1161-62 (9th Cir. 1989)).

### C. Analysis

There is no dispute that Mr. Wells meets the "custody" requirement of the statute and that this is Motion is timely under § 2255(f).

The Court has identified ten grounds/claims for relief raised in this Motion. The Government presents many overlapping arguments for why these claims must be dismissed, not all of which need to be discussed. The Government's central argument for denying relief is because Mr. Wells has not raised many of these issues on appeal—so called procedural default—and because he has failed to demonstrate actual prejudice from the alleged errors due to a central misunderstanding of the elements the Government needed to prove for the charge of conspiracy to commit bank fraud. More specifically, the Government asserts:

> Except for his ineffective-assistance-of-counsel claim (Claim 4), all of Wells's current claims are based on evidence that was adduced at the presentencing evidentiary hearing, as well as prior discovery (Claims 1-3, 5-9), or else challenge the legality of the sentence imposed for his supervision revocation (Claim 10). With the exception of Wells's challenge to the Guidelines burden of proof (Claim 9) and the Guidelines enhancements for loss amount, number of victims, and leadership role (Claim 8 in part), the

> remainder of Wells's current claims—Claims 1-3, 5-7, 8 in part, 10—were not raised on appeal and, except for the enhancement for possessing device-making equipment (Claim 8, in part), were also not raised in this Court prior to entry of judgment. Accordingly, these previously-unraised claims have been procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998). Unless Wells can overcome these procedural defaults, the Court cannot grant relief on these claims. *See Bousley*, 523 U.S. at 622; *United States v. Seng Chen Yong*, 926 F.3d 582, 590 (9th Cir. 2019). To do so, Wells must show both "cause" excusing the default and "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). He cannot.

Dkt. #11 at 17. The Court agrees that Mr. Wells's claims 1-3, 5-7, 8 in part, and 10 are procedurally defaulted. Whether or not he can show "cause" is tied in with his ineffective assistance claim. The Court will now address whether he can show actual prejudice for any of his claims.

Mr. Wells pleaded guilty to conspiracy to violate 18 U.S.C. §1344(2), which criminalizes "a scheme or artifice . . . to obtain money, funds, credits, assets, securities, or other property owned by or under the custody of or control of a financial institution, by means of material, false or fraudulent pretenses, representations, or promises." Case No. 2:16-cr-0007-RSM, Dkt. #272 at 5. A "financial institution" includes an FDIC-insured bank, *see* 18 U.S.C. §20(1), and the indictment listed four such banks affected by the scheme: KeyBank, Green Dot Bank, Sunrise Bank, and JP Morgan Chase. Case No. 2:16-cr-0007-RSM, Dkt. #53. During the change-of-plea hearing, Wells admitted to conspiring to obtain money "from another source" by fraud, and defense counsel speculated that "other source" was "probably the payment processor, which we understand to be subsidiaries of various banks." Case No. 2:16-cr-0007-RSM, Dkt. #272 at 13-14.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 7

During the pretrial evidentiary hearing, the evidence showed that the fraudulently obtained funds were not received from payment processors directly; those funds were obtained from FDIC-insured banks that held the payment processors' settlement accounts. However, with the exception of Key Bank, none of the financial institutions named in the indictment had direct losses due to the underlying criminal scheme. The losses were actually born by payment processors or victim-merchants, none of which meet the legal definition of a "financial institution." Mr. Wells has latched onto this fact to demonstrate actual prejudice and to support his ineffective assistance of counsel claim.

The Government explains its reasons for charging Mr. Wells as they did:

> Wells also misunderstands how the bank-fraud statute works. Wells first insists that the statute requires proof that a bank "owned 'and' had custody and control" of the property at issue. [Dkt. #1] at 31-32. This is wrong; the property must be "owned by, or under the custody or control of, a financial institution." 18 U.S.C. §1344(2) (emphasis added). By its terms, §1344(2) is not limited to bank-owned property; it includes property held as a custodian for a third-party. *See also Shaw v. United States*, 137 S. Ct. 462, 466 (2016). Wells also seems to believe that the government was required to prove that a false representation was made directly to a FDIC-insured institution. [Dkt. #1] at 30. This too is wrong; it is sufficient if the "false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control," even if that false statement is made to a third party. *Loughrin v. United States*, 573 U.S. 351, 363-64 (2014). And Wells is also wrong to insist that the government was required to prove he "knew the banks" held the money at issue. [Dkt. #1] at 30. Nothing in §1344(2) "demands that a defendant have a specific intent to deceive a bank." *Loughrin*, 573 U.S. at 357. The statute only requires that the defendant engage in a scheme to obtain money in a bank's custody and control by false pretenses; the government is not required to prove the defendant knew the identity of the bank holding the funds. *See id.* at 355-58.
>
> Under a proper reading of the bank fraud statue, there is no problem with the government's theory of the case. Wells insists that the government was required to prove that fraudulent refunds were funded directly by banks named in the indictment, and

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 8

> reasons this requires proof that the victim-merchants who were defrauded held accounts at those banks. [Dkt. #1] at 5-7, 26, 30-33. Of course, since Wells was convicted of conspiracy, not substantive bank fraud, the government was not required to prove that anyone was actually defrauded; the agreement to engage in the scheme is the crime. This point aside, and again ignoring that developing proof of the crime was not the point of the evidentiary hearing, Wells is just wrong on this point. If put to its proof, all the government would need to show was that Wells agreed to participate in a scheme involving merchants who used a payment processor whose settlement account was at a named bank, e.g., that Chase Paymentech processed transactions for retailers and held its settlement account at JP Morgan Chase. This is because, given the settlement process attendant with credit/debit/gift cards, the conspirators' misrepresentations (fraudulently loading cards) naturally induced named financial institutions to pay money from payment-processor settlement accounts in the course of processing fraudulent refunds. [Transcript of evidentiary hearing] 36-40. This is what the hearing evidence showed, and agreeing to engage in this scheme is conspiracy to commit bank fraud.

Dkt. #11 at 21–22.

The Court finds that the Government correctly states the elements of the crime charged and how they were met in this case. A correct reading of the charges and the facts presented to the Court in the evidentiary hearing makes it impossible for Mr. Wells to demonstrate actual prejudice from the alleged constitutional errors in this Motion. Without actual prejudice, Mr. Wells's claims are properly dismissed, as discussed individually below.

**1. Brady Violation re: Victim-Merchants**

Mr. Wells first argues that the Government failed to disclose that the victim-merchants who suffered losses in this case did not hold accounts at any banks named in the indictment. Dkt. #1 at 5-15.

To establish a *Brady* violation, the defendant must show that the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching;" this evidence "must have been suppressed by the State, either willfully or inadvertently;" and the

defendant must demonstrate "prejudice" from the non-disclosure.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The Government argues that it did not fail to disclose anything because this information was evident from what was produced in discovery.  Dkt. #11 at 23.  However, as discussed above, the Government also argues that the location of the victim-merchants' accounts was irrelevant to establishing Mr. Wells's guilt of the crime charged.  The Court agrees.  Mr. Wells therefore cannot show prejudice.  Mr. Wells does not demonstrate any other basis for relief under this claim.

### 2. Government Misconduct at the Grand Jury

Mr. Wells claims that outrageous governmental misconduct occurred at the grand jury, while also stating that this claim is not a freestanding claim for relief, but rather "turns on what is the appropriate remedy" for his *Brady* claim. Dkt. #1 at 16, 21. Because there is no valid *Brady* claim, relief will not be granted under this claim.  Mr. Wells also alleges under this claim that the Government committed misconduct by allowing an FBI agent to testify falsely before the grand jury that three banks were defrauded. Dkt. #1 at 17–20.  The Government argues that the record shows these banks were "induced to turn over money in their custody by false pretenses" and that it is immaterial that they themselves did not suffer losses. Dkt. #11 at 25–26.  Again, Mr. Wells's claim is built on an incorrect reading of the law and is properly dismissed.

### 3. Guilty Plea not Supported by Sufficient Facts

Wells contends his guilty plea is not supported by legally sufficient evidence. Dkt. #1. at 22-25. This type of claim was waived by Mr. Wells's guilty plea. *See United States v. Cruz-Rivera*, 357 F.3d 10, 14 (1st Cir. 2004); *Nobles v. Beto*, 439 F.2d 1001, 1002 n.1 (5th Cir.

1971); *cf. Brady v. United States*, 397 U.S. 742, 757 (1970) ("[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case").

### 4. Ineffective Assistance of Counsel

Mr. Wells argues his guilty plea was unknowing and involuntary due to ineffective assistance of counsel. *See* Dkt. #1 at 22. Specifically, he claims he "was unaware of the standard required to prove I committed the offense for which I was charged..." Dkt. #1 at 25. He also argues that his counsel was ineffective because he failed to investigate where the victim-merchants actually held their deposit accounts, demonstrating that his counsel "did not understand the case." *Id*. at 28-29. According to Mr. Wells, had his counsel conducted adequate investigation and research, he would have concluded that none of the victim-merchants held accounts at the banks named in the indictment, and thus that Mr. Wells was innocent of the crime as charged. *See id.* at 31-37.

The standards to be applied to ineffective assistance claims are those defined in *Strickland v. Washington*, 466 U.S. 668 (1984). Such a claim has two components: inadequate performance by counsel, and prejudice resulting from that inadequate performance. To prevail, a defendant first must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. However, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at

688 (citation omitted). The presumption is that counsel was competent. *Id*. Even if the first part of the Strickland test is satisfied, a defendant is not entitled to relief unless he can show prejudice. *Id*. at 687. Here, Wells "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

For the reasons stated above, Mr. Wells's analysis of the elements necessary to prove conspiracy to commit bank fraud is incorrect. His claim that counsel allowed him to plead guilty when he was actually innocent of the crime is, for the reasons above, factually and legally wrong. He repeatedly argues that his counsel did not understand the case, *see, e.g.,* Dkt. #13 at 2, but has failed to show that his counsel committed any error, and thus he has failed to show that he would not have pleaded guilty or that his counsel otherwise "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687.

### 5. Actual Innocence

Mr. Wells claims actual innocence, but has misinterpreted the facts and law of this case and thus for the reasons stated above has failed to demonstrate actual innocence.

### 6. Constructive Amendment of Indictment from the Presentencing Hearing

A constructive amendment occurs when the evidence presented at trial proves "a complex set of facts distinctly different from those set forth in the charging instrument' such that the defendant lacked notice," or "when the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Lopez*, 4 F.4th 706, 727-28 (9th Cir. 2021) (citation omitted).

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 12

Mr. Wells's claim again rests on the same incorrect understanding of the facts and law. He has failed to demonstrate that his indictment was constructively amended.

### 7-9. Guideline Enhancements violate Double Jeopardy, Preponderance of the Evidence standard and Enhancements, and Relevant Conduct and Guideline Enhancements

Mr. Wells claims that the Court based Guidelines sentence enhancements on events that were not part of his crime in violation of the Double Jeopardy Clause. Dkt. #1 at 39, 45-46. Mr. Wells further claims the Court erred in applying the preponderance-of-the-evidence standard, rather than the clear-and-convincing-evidence standard, in determining whether various Guidelines enhancements applied.

The Government asserts that these claims are foreclosed by *Witte v. United States*, 515 U.S. 389 (1995), which held that where the defendant's Guidelines range was within the statutory maximum for the crime, the Guidelines relevant conduct provision does not violate the Double Jeopardy Clause, even where the relevant conduct is uncharged crimes. Dkt. #11 at 28 (citing 515 U.S. at 395-402). The Government points out that the Ninth Circuit rejected the clear-and convincing standard claim on Wells's direct appeal. Dkt. #11 at 30 (citing *Wells*, 804 F. App'x at 518). The Government cites to, *inter alia*, *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010) for the proposition that "the rule in the Ninth Circuit is that when a defendant is charged with a fraud-based conspiracy, the preponderance-of-the-evidence standard applies even where a Guidelines enhancement—namely loss amount—results in a dramatic increase in the Guidelines range due to the defendant's being liable not just for the losses he caused, but for all losses caused by the conspiracy." *Id*. The Court has reviewed Mr.

Wells's many arguments about losses charged versus losses presented at sentencing and finds no error in the Court's prior analysis.

### 10. Challenge to 3-year Supervision-Revocation Sentence

Mr. Wells also attempts to challenge his 3-year sentence. When Mr. Wells committed the offense at issue in Case No. 2:16-cr-0007-RSM, he was on supervised release following a prior conviction for Access Device Fraud, in violation of 18 U.S.C. §1029(a)(1). *See* Case No. 12-cr-0339-RSM, Dkt. #22. The statutory maximum for this offense is 10 years' imprisonment. 18 U.S.C. § 1029(c)(1)(A)(i). Because Mr. Wells's access-device-fraud conviction is a Class C felony, *see* 18 U.S.C. § 3559(a)(3), the statutory maximum for Wells's supervision revocation was two years. *See* 18 U.S.C. §3583(e)(3). The Court, in error, imposed a three-year sentence. Given that the sentencing for the two crimes occurred at one hearing, Mr. Wells understandably challenges these sentences at the same time when he is in fact required to file a separate § 2255 Motion.

The Government argues that Mr. Wells has in any event procedurally defaulted on this claim and that he cannot show actual prejudice because the three-year sentence was ordered to run concurrently with the 134-month sentence, *i.e.* his overall term of incarceration is unaffected. Dkt. #11 at 34–35. The Ninth Circuit has held that where there is error in a sentence that runs concurrently with a valid sentence of equal or longer length, the defendant's substantial rights are unaffected by the error. *See, e.g., United States v. Mitchell*, 502 F.3d 931, 996-97 (9th Cir. 2007); *United States v. Ramos-Godinez*, 273 F.3d 820, 825 (9th Cir. 2001). The Court agrees on both points and finds that, because he cannot overcome his procedural default, correction of this sentencing error is not available. Furthermore, Mr. Wells has not demonstrated that this error has extended his release date or otherwise caused prejudice.

ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 - 14

### D. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2255 may appeal this Court's dismissal of his petition only after obtaining a Certificate of Appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). The Court finds that the law above is clear and there is no basis to issue a COA.

### IV.   CONCLUSION

Having considered Petitioner's motion, Respondent's answer thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1. Petitioner's Motion under § 2255 (Dkt. #1) is DENIED. No COA shall be issued.
2. Petitioner's Motion for Reconsideration re: Order on Motion for Discovery and Appointment of Counsel, Dkt. #12, is DENIED AS MOOT.
3. This matter is now CLOSED.
4. The Clerk of the Court is directed to forward a copy of this Order to Petitioner and all counsel of record.

DATED this 4th day of November, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE